**MASON LIETZ & KLINGER LLP**
Danielle L. Perry (SBN 292120)
Gary E. Mason*
5101 Wisconsin Avenue NW, Suite 305
Washington, D.C. 20016
Telephone: (202) 429-2290
Facsimile: (202) 429-2294
Email: dperry@masonllp.com
Email: gmason@masonllp.com

*Counsel for Plaintiff and the Proposed Class*

[Additional counsel appear on signature page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIELA GRUEN, on behalf of herself and all others similarly situated, | Case No.: 3:22-cv-00935 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| THE CLOROX COMPANY and THE BURT'S BEES PRODUCTS COMPANY, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Daniela Gruen ("Plaintiff"), individually and on behalf of all others similarly situated, respectfully offers the following for her Complaint against The Clorox Company ("Clorox") and The Burt's Bees Products Company ("Burt's Bees") (collectively "Defendants"), and alleges upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## **NATURE OF THE ACTION**

1.     Plaintiff brings this class action lawsuit on behalf of herself and similarly situated consumers ("Class Members") who purchased for personal, family or household use certain cosmetic products, including but not limited to Burt's Bees Cosmetic Products, which are unfit for their intended use because they contain unsafe per- and polyfluoroalkyl substances ("PFAS") ("Products").[1] The Products are formulated, designed, manufactured, advertised, distributed, and sold by Defendants to consumers, including Plaintiff, across the United States both in retail establishments and online, including in California and New Jersey.

2.     PFAS are a group of synthetic chemicals known to be harmful to both the environment and humans. Because PFAS persist and accumulate over time, they are harmful even at very low levels. PFAS in cosmetics may pose "a risk to human health through direct and indirect exposure, as well as a risk to ecosystem health throughout the lifecycle of these products."[2]

3.     Scientists are studying—and extremely concerned about—how PFAS affect human health and how the risks may be underestimated. The CDC outlined "a host of health effects

---

[1] The action concerns all Burt's Bees Cosmetics products that contain PFAS, including but not limited to: Burt's Bees All Aflutter Mascara, Burt's Bees Nourishing Mascara, and Burt's Bees Lip Shimmer. These particular Products have been independently tested and found to contain PFAS. Discovery will reveal the exhaustive list of substantially similar and defective Burt's Bees products that are included in this action.

[2] Heather D. Whitehead et al., *Fluorinated Compounds in North American Cosmetics*, Env't Sci. & Tech. Letters 2021, 8, 7, 538–44 (June 15, 2021), https://pubs.acs.org/doi/10.1021/acs.estlett.1c00240; *corrected to revise Canadian Product Test results*, https://pubs.acs.org/doi/10.1021/acs.estlett.1c00903 (last visited Feb. 1, 2022).

associated with PFAS exposure, including cancer, liver damage, decreased fertility, and increased risk of asthma and thyroid disease."[3]

4.     Of particular concern are cosmetics that "are applied close to the eyes and the mouth, which could increase exposure and hence risk due to enhanced absorption and ingestion."[4]

5.     PFAS have become known as "forever chemicals" because the carbon-fluorine bonds in PFAS are extremely strong and thus are not appreciably degraded under environmental conditions. The continued use of PFAS is, by their nature, unsustainable, because it will necessarily lead to a greater concentration of PFAS in the environment.

6.     On Burt's Bees' website and product packaging, it claims that the Products are "consciously crafted with ingredients from nature," are all "over 95% natural origin" and formulated without "chemicals of concern." Further, Defendants represent that its Products are "KIND TO SKIN & PLANET."[5]

7.     Defendants represent that the Products are safe and effective for their intended use, and reasonable consumers expect that cosmetic Products marketed and sold to be applied to a person's face and skin, and especially near the eyes and on lips, will not contain dangerous, human-made chemicals like PFAS. Contrary to Defendants' representations, the Products are not safe because they contain PFAS, which have a negative impact on the health of humans.[6]

8.     Before and at the time of their purchases, Defendants failed to notify Plaintiff or similarly situated consumers that the Products are neither "KIND TO SKIN [nor] PLANET" due to the Products' containing PFAS, whether through its product labels, the ingredients list, other packaging, advertising, or in any other manner.

---

[3] Harvard T.H. Chan Sch. of Pub. Health, *Health risks of widely used chemicals may be underestimated* (June 27, 2018), https://www.hsph.harvard.edu/news/hsph-in-the-news/pfas-health-risks-underestimated/ (last viewed Feb. 1, 2022).
[4] *Id.*
[5] *See* https://www.burtsbees.com/values/ (last viewed Feb. 1, 2022).
[6] Elsie M. Sunderland et al., *A review of the pathways of human exposure to poly- and perjluoroalkyl substances (PFASs) and present understanding of health effects*, 29 J. Expo Sci. Env't Epidemiol, 131–47 (2019), doi: 10.1038/s41370-018-0094-l ("Multiple studies find significant associations between PFAS exposure and adverse immune outcomes in children.").

CLASS ACTION COMPLAINT

9.     The Products Plaintiff and Class Members purchased are either worthless or worth less than the purchase price because Defendants failed to disclose that they are dangerous to the health of the consumer and to the environment. Plaintiff seeks damages and equitable remedies on behalf of herself and the proposed Classes, defined herein.

## PARTIES

### Plaintiff

10.     Plaintiff Daniela Gruen is a resident and citizen of Jamesburg, Middlesex County, New Jersey, who purchased and used Burt's Bees Cosmetic Products within the relevant time period.

### Defendants

11.     Defendant The Clorox Company is a Delaware corporation with its principal place of business located at 1221 Broadway, Oakland, California 92612.

12.     Defendant The Clorox Company purchased The Burt's Bees Company in or about 2007.

13.     Defendant The Burt's Bees Products Company is a wholly owned subsidiary of The Clorox Company with its primary place of business located at 1221 Broadway, Oakland, California 92612.

14.     Defendants jointly design, develop, produce, market, and distribute the Products from their headquarters in California, the location from which advertising and other promotional literature decisions are made. Defendants knew that the labeling of the Products is false and misleading to a reasonable consumer, because the Products contain harmful per- and polyfluoroalkyl substances, which are inconsistent with the Products advertising labeling.

15.     Defendants can be served c/o Corporation Service Company, 330 N. Brand Blvd., Suite 700, Glendale, California 91203.

## JURISDICTION AND VENUE

16.     This Court has personal jurisdiction over Defendants. Defendants purposefully avail themselves of the California consumer market and distributes the Products to thousands of

retail locations throughout California, where the Products are purchased by thousands of consumers every day. Moreover, both of the Defendants are headquartered in Oakland, California.

17.     This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs. Plaintiff alleges that the total claims of individual members of the proposed Class (as defined herein) are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

18.     Venue is proper in this District under 28 U.S.C. § 1391(a). Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature, quality, and/or ingredients of the Products, occurred within this District.

## COMMON FACTUAL ALLEGATIONS

### Defendants' Claims of Safe and Sustainable Products

19.     Defendants are a major household product corporation and its wholly owned subsidiary. Defendants sell Burt's Bees Cosmetic Products through third-party retail stores (including department stores, "big box" stores, grocery stores, etc.), online resellers (like Amazon and others) and online through their own website (https://www.burtsbees.com/).

20.     Clorox purchased Burt's Bees in late 2007. Defendant Clorox claims that "[b]y supporting science-backed research to inform public health best practices, we believe we can help to create a cleaner and safer future where we can all thrive."[7]

21.     Over the course of several decades, separately and since Burt's Bees' acquisition by Clorox, Defendants have gained the trust of consumers, who reasonably believed that Defendants' products, including the defective Products at issue, are made with safe, high-quality

---

[7] See https://www.clorox.com/our-purpose/public-spaces/ (last viewed Feb. 1, 2022).

materials, and can be used safely as intended; yet these Products were not safe. As discussed further herein, independent testing of the Products shows them to be adulterated with PFAS—and at some of the highest levels of all products tested.

22.     On its website, Defendant Burt's Bees claims it has "been making products that respect your skin and the planet for a full-circle clean—from source to disposal—since 1984."[8] In addition, on all or most of its products and/or packaging, Burt's Bees includes similar information, as shown in the example below.[9]

**KIND TO SKIN & PLANET SINCE 1984**

 Ingredients From Nature

 Responsible Sourcing

 Leaping Bunny Certified

 Recyclable Packaging

 Landfill-free Operations

 CarbonNeutral® Certified

23.     Furthermore, Burt's Bees claims that its products are "consciously crafted with ingredients from nature to nourish and revitalize your skin. We select nutrient-rich ingredients to help support a strong and healthy skin barrier[.] We strive for 100% natural origin formulas, and

---

[8] *See* https://www.burtsbees.com/ (last viewed Feb. 1, 2022).
[9] *See* https://www.burtsbees.com/values/ (last viewed Feb. 3, 2022).

all of our products are over 95% natural origin[.] **We formulate without phthalates, parabens, petrolatum, sodium lauryl sulfate (SLS) and other chemicals of concern.**"[10]

24.     Clorox and Burt's Bees Cosmetics both built their strong reputation and consumer trust by manufacturing and selling brands that have typically been of reliable quality, and as a result, Defendants earn billions annually in revenue.

25.     As a subsidiary of The Clorox Company, Burt's Bees is part of Clorox's "Environmental Commitment" strategy, which includes its Safe Water Projects.[11] However, nowhere on either Defendant's website do they divulge that the Burt's Bees Products are neither safe nor sustainable, or that PFAS are unsafe for both humans and the environment—including water supplies.

26.     Open disclosure of PFAS and their adverse impact on health and environment would inevitably impact the Products' sales and Defendants' standing in the rapidly growing "clean beauty" market. In reality, the Products contain high levels of organic fluorine, an indicator of PFAS, which are not "KIND TO SKIN & PLANET," natural, and instead, exemplify "other chemicals of concern."

27.     Defendants' misrepresentations about the presence of and importance of environmentally damaging and unhealthy toxic chemicals—PFAS—in the Products is driven by Defendants' desire to maximize sales revenue.

28.     Defendants' conduct in marketing the Products as "KIND TO SKIN & PLANET," "consciously crafted with ingredients from nature" and formulated without "chemicals of concern" deceived and/or is likely to deceive the public. Consumers, including Plaintiff and Class Members, have been, and continue to be, deceived into believing that the Products are free from toxic chemicals and sustainable, when in fact, the Products contain PFAS known to be harmful to humans and to accumulate in the environment.

---

[10] *Id.* (emphasis added).
[11] *See* https://www.clorox.com/our-purpose/our-causes/ (last visited Feb. 1, 2022).

29.     No reasonable consumer would have purchased, or paid as much, for the Products had they known products contained harmful ingredients linked to adverse health effects in humans. Defendants knew that the Products were manufactured with PFAS but chose to misrepresent this material information to their consumers in an effort to persuade them they were, in fact, buying clean, natural, and sustainable products, rather than products containing potentially harmful chemicals.

30.     Defendants' misconduct is uniform and widespread. Defendants formulate, design, manufacture, market, advertise, distribute, and sell its Burt's Bees-branded PFAS cosmetics to consumers throughout the United States, including in the States of California (Defendants' headquarters) and New Jersey (Plaintiff's residence).

31.     Defendants do not disclose on their websites, in ingredient lists, on packaging, or in any other manner, that the Products contain PFAS; however, independent testing on the Products show high levels of PFAS as described in detail below.

32.     Defendants' misrepresentations about this material information makes its false and misleading marketing even more egregious.

33.     Defendants' misrepresentations are intentional, or otherwise entirely careless, and render the Products worthless or less valuable. If Defendants had disclosed to Plaintiff and putative Class Members that the Products contained highly toxic and unsustainable PFAS, Plaintiff and putative Class Members would not have purchased the Products, or they would have paid less for them.

34.     Alternative formulation, designs, materials, and manufacturing methods were available to Defendants at the time the Products were formulated, designed and manufactured, and such alternative formulations and designs were and are used by other manufacturers to produce and sell clean, natural makeup.

**The Burt's Bees Products**

35.      Each of Burt's Bees Products sold by Defendants in the United States is advertised as "consciously crafted with ingredients from nature," "over 95% natural origin" and formulated

without "chemicals of concern." Further, Defendants claim each of the Products are "KIND TO SKIN & PLANET."

36. The Products at issue include all Burt's Bees Cosmetic Products that contain PFAS. These include, but are likely not limited to, Burt's Bees All Aflutter Mascara, Burt's Bees Nourishing Mascara, and Burt's Bees Lip Shimmer. These three particular Products have been independently tested and found to contain high levels of PFAS, as discussed in greater detail below.

**All Aflutter Mascara**

37. Burt's Bees sells its "All Aflutter Mascara" for approximately $13.00 per tube and advertises it as an "intensely pigmented, multi-benefit mascara features a blend of plant-based waxes and nourishing jojoba oil to deliver instant definition, volume, length and all-day wear."[12]

38. On its website, under "Benefits and Claims" it bullet points:

- 100% natural origin
- Gentle and lightweight
- Safe for sensitive eyes
- Won't clump, smudge or flake

39. The ingredients list for "All Aflutter Mascara" appears on both its packaging (shown below) and the Burt's Bees website, neither of which includes any PFAS as ingredients.[13] The stated "Key Ingredients" include:

> aqua [water], cera alba [beeswax], glycerin, candelilla cera [euphorbia cerifera (candelilla) wax], stearic acid, galactoarabinan, simmondsia chinensis (jojoba) seed oil, sodium stearoyl lactylate, pullulan, hectorite, sorbitol, glyceryl caprylate, mica, glyceryl stearate, levulinic acid, coco-glucoside, p-anisic acid, xanthan gum, sodium levulinate, acacia senegal gum, potassium stearate,

---

[12] *See* https://www.burtsbees.com/product/all-aflutter-multi-benefit-mascara/VM-792850903340.html (last visited Feb. 1, 2022).

[13] According to the FDA, some of the common PFAS that are used as ingredients in cosmetics include: PTFE (polytetrafluoroethylene), perfluorooctyl triethoxysilane, perfluorononyl dimethicone, perfluorodecalin, and perfluorohexane (content current as of Feb. 19, 2021). Available at: https://www.fda.gov/cosmetics/cosmetic-ingredients/and-polyfluoroalkyl-substances-pfas-cosmetics#:~:text=Some%20common%20PFAS%20used%20as,dmethicone%2C%20perfluorodecalin%2C%20and%20perfluorohexane (last viewed on Feb. 3, 2022).

trehalose, stearoyl glutamic acid. May contain [+/-]: CI 774917749277499 [iron oxides].



40.     Although none of Burt's Bees advertising or packaging states that its "All Aflutter Mascara" includes PFAS, the "forever chemicals," independent testing shows that this Product contains <u>357 ppm organic fluorine</u>.[14]

**Burt's Bees Nourishing Mascara**

41.     Burt's Bees sells its "Nourishing Mascara" for approximately $13.00 per tube, and advertises it by claiming it "lengthens and defines lashes instantly. The 100% natural formula is

---

[14] *See* https://www.mamavation.com/beauty/green-beauty-cosmetic-makeup-guide-pfas-forever-chemicals.html (last viewed on Feb. 3, 2022).

made with Jojoba Oil and naturally moisturizing Glycerin to nourish lashes and is gentle enough for your delicate eye area."[15]

42.   On its website, under "Benefits and Claims" it bullet points:

- 100% natural formula lengthens and defines lashes instantly; comes with convenient, easy-to-use applicator brush

- Gentle enough for the delicate eye area; safe for sensitive eyes and contact lens wearers

- Formulated without parabens, phthalates, SLS, petrolatum or synthetic fragrances; ophthalmologist tested; not tested on animals; cruelty free

43.   The ingredients list for "Nourishing Mascara" appears on both its packaging (shown below) and the Burt's Bees website, neither of which includes any PFAS as ingredients.[16] The stated "Key Ingredients" include:

aqua [water], cera alba [beeswax], glycerin, euphorbia cerifera cera [euphorbia cerifera (candelilla) wax], stearic acid, galactoarabinan, simmondsia chinensis (jojoba) seed oil, sodium stearoyl lactylate, pullulan, hectorite, sorbitol, acacia senegal gum, xanthan gum, coco-glucoside, mica, trehalose, p-anisic acid, glyceryl caprylate, glyceryl stearate, levulinic acid, sodium levulinate, potassium stearate, stearoyl glutamic acid. May contain [+/-]: CI 77491•CI 77492•CI 77499 [iron oxides].

---

[15]   *See*   https://www.burtsbees.com/product/nourishing-mascara/VM-792850900462.html   (last viewed on Feb. 3, 2022).
[16]   According to the FDA, some of the common PFAS that are used as ingredients in cosmetics include: PTFE (polytetrafluoroethylene), perfluorooctyl triethoxysilane, perfluorononyl dimethicone, perfluorodecalin, and perfluorohexane (content current as of Feb. 19, 2021). Available at: https://www.fda.gov/cosmetics/cosmetic-ingredients/and-polyfluoroalkyl-substances-pfas-cosmetics#:~:text=Some%20common%20PFAS%20used%20as,dimethicone%2C%20perfluorodecalin%2C%20and%20perfluorohexane (last viewed on Feb. 3, 2022).



44.     Although none of Burt's Bees advertising or packaging states that its "Nourishing Mascara" includes PFAS, the "forever chemicals," independent testing also shows that this Product contains 357 ppm organic fluorine.[17]

**Burt's Bees Lip Shimmer**

45.     Burt's Bees "Lip Shimmer" sells for approximately $6.50 per tube. Burt's Bees advertises it claiming that its "Shea Butter and antioxidant-rich Fruit Oils moisturize, nourish and soften lips naturally and lovingly."[18]

46.     On its website, under "Benefits and Claims" it bullet points:

- Luminescent, antioxidant-rich color

- 100% Natural Origin

- Invigorates with Peppermint flavor

---

[17] *See* https://www.mamavation.com/beauty/green-beauty-cosmetic-makeup-guide-pfas-forever-chemicals.html (last visited on Feb. 3, 2022).
[18] *See* https://www.burtsbees.com/product/lip-shimmer/VM-37499-00-1.html (last visited on Feb. 3, 2022).

- Comes in 14 shimmering shades
- Nourishes and moisturizes lips with Vitamin E and responsibly sourced Beeswax
- Enriched with Sunflower Oils
- Formulated without parabens, phthalates, petrolatum, or SLS
- Leaping Bunny Certified
- Recyclable with TerraCycle

47.    The ingredients list for "Lip Shimmer" appears on both its packaging (shown below) and the Burt's Bees website, neither of which includes any PFAS as ingredients.[19] The stated "Key Ingredients" include:

ricinus communis (castor) seed oil, helianthus annuus (sunflower) seed oil, beeswax, euphorbia cerifera wax, mentha piperita (peppermint) oil, lanolin, theobroma cacao (cocoa) seed butter, copernicia cerifera wax, butyrospermum parkii (shea) butter, fragaria ananassa (strawberry) seed oil, prunus armeniaca apricot) kernel oil, ribes nigrum black currant) seed oil, rosmarinus officinalis (rosemary) leaf extract, sambucus nigra (elderberry) seed oil, tocopherol, canola oil, glycine soja (soybean) oil. +/-: mica, iron oxides, carmine, alumina, titanium dioxide

Cocoa Ingredients: ricinus communis (castor) seed oil, helianthus annuus (sunflower) seed oil, beeswax, euphorbia cerifera wax, mentha piperita (peppermint) oil, lanolin, theobroma cacao (cocoa) seed butter, copernicia cerifera wax, tocopherol, rosmarinus officinalis (rosemary) leaf extract, canola oil, glycine soja (soybean) oil. +/-: mica, iron oxides, carmine, alumina, titanium dioxide, tin oxide.

---

[19] According to the FDA, some of the common PFAS that are used as ingredients in cosmetics include: PTFE (polytetrafluoroethylene), perfluorooctyl triethoxysilane, perfluorononyl dimethicone, perfluorodecalin, and perfluorohexane (content current as of Feb. 19, 2021). Available at: https://www.fda.gov/cosmetics/cosmetic-ingredients/and-polyfluoroalkyl-substances-pfas-cosmetics#:~:text=Some%20common%20PFAS%20used%20as,dimethicone%2C%20perfluorodecalin%2C%20and%20perfluorohexane (last visited on Feb. 3, 2022).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22





23   48.    Although none of Burt's Bees advertising or packaging states that its "Lip

24  Shimmer" includes PFAS, the "forever chemicals," independent testing also shows that this

25  Product contains 36 ppm organic fluorine.[20]

26

27  [20] *See* https://www.mamavation.com/beauty/green-beauty-cosmetic-makeup-guide-pfas-forever-
chemicals.html (last visited Feb. 3, 2022).

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Testing for PFAS in Cosmetic Products**

**The Cosmetic Study**

49.      A study was conducted in June 2021 entitled "Fluorinated Compounds in North American Cosmetics" (the "Cosmetic Study") to assess the potential health and environmental risk of PFAS in cosmetics, analyzing more than 231 cosmetic products purchased in the United States and Canada to determine the presence of PFAS.[21]

50.      The Cosmetic Study explained likely reasons for the use of PFAS in makeup:

PFAS are used in cosmetics due to their properties such hydrophobicity and film-forming ability, which are thought to increase product wear, durability, and spreadability. Additional claimed benefits are increased skin absorption of the product and improvements in the appearance or texture of skin.[22]

51.      Similarly, the FDA has stated that PFAS are "intentionally added" to certain products such as lotions, cleansers, nail polish, shaving cream, foundation, lipstick, eyeliner, eyeshadow, and mascara "to condition, smooth or make skin appear shiny."[23]

52.      PFAS are also added to cosmetics to increase their durability and water resistance."[24]

53.      The U.S. Food and Drug Administration ("FDA") classifies the Products as cosmetics. The Defendants' Products fall under FDA regulations.

54.      By law, all ingredients contained within cosmetics are required to be listed on the product label, in descending order of magnitude.

55.      Common names for PFAS found in cosmetics include PTFE (polytetrafluoroethylene), perfluorooctyl triethoxysilane, perfluorononyl dimethicone, perfluorodecalin, and perfluorohexane.

---

[21] *Id.*
[22] *Id.*
[23] Sandee LaMotte, *Makeup May Contain Potentially Toxic Chemicals Called PFAS*, Study Finds, CNN (June 15, 2021, 7:46 PM), https://www.cnn.com/2021/06/15/health/makeup-toxic-chemicals -wellness/index.html (last visited Feb. 3, 2022).
[24] Whitehead et al., *supra* note 2.

CLASS ACTION COMPLAINT

56.     Despite being required by the FDA to list all ingredients present in cosmetics, the Cosmetic Study found approximately 88% of the tested products failed to disclose on their labels any ingredients that would explain those chemical markers.

57.     In order to analyze the presence of PFAS, the Cosmetic Study used a marker for PFAS—the chemical fluorine, which is different than the inorganic fluorine added to drinking water.

58.     "We found fluorine as a surrogate for PFAS was in all sorts of cosmetics. We didn't expect almost every cosmetic to light up like it did," said study author, Graham Peaslee, a professor of physics, chemistry and biochemistry at the University of Notre Dame.[25]

59.     The Cosmetic Study concluded that more than three-quarters of waterproof mascara, nearly two-thirds of foundations and liquid lipsticks, and more than half of eye and lip products had high fluorine concentrations, indicating PFAS were likely present.

60.     In addition, samples from 29 of the products with the highest levels of fluorine were sent to an outside lab for an in-depth analysis that could identify 53 specific PFAS chemicals. The analysis found each of those 29 products contained at least four PFAS chemicals of concern.

61.     In 28 of the 29 products—like the Products here—PFAS chemicals were not disclosed on the label.

62.     "PFAS in cosmetics may pose a risk to human health through direct and indirect exposure, as well as a risk to ecosystem health throughout the lifecycle of these products."[26]

63.     Of particular concern with PFAS utilized in cosmetics "is that these classes of cosmetics are applied close to the eyes and the mouth, which could increase exposure and hence risk due to enhanced absorption and ingestion."[27]

**Testing of Green Beauty Products including Burt's Bees**

64.     Following the publication of the Cosmetic Study discussed above, Mamavation, a "green" product investigation organization and network, decided to test for PFAS in beauty

---

[25] LaMotte, *supra* note 23.
[26] Whitehead et al., *supra* note 2.
[27] *Id.*

products that are advertised and sold as "green" (*i.e.*, designed to be environmentally sustainable, eco-friendly, and typically manufactured from natural and non-toxic materials).[28]

65. Mamavation tested 83 beauty products from 49 different green beauty cosmetic brands, mostly mascara and lip products, identifying three exposure levels: above 30 parts-per-million (ppm) of organic fluorine was considered "high exposure"; between 10 ppm and 29 ppm was considered "medium exposure"; and levels below 10 ppm were considered "low exposure."

66. The Mamavation study tested for organic fluorine, which is considered a marker for PFAS compounds. This method of testing is being used to measure PFAS in other industries.

67. Burt's Bees Products were tested by Mamavation. Based on the organic fluorine levels found in three Product types, Burt's Bees Products were put in Mamavation's "*Not Our Favorite Green Beauty Cosmetic Brands with High Levels of PFAS 'Forever Chemicals'*" category. The organic fluorine levels for the tested Burt's Bees Products were:

      a. Burt's Bees All Aflutter Mascara (357 ppm organic fluorine),

      b. Burt's Bees Nourishing Mascara (357 ppm organic fluorine), and

      c. Burt's Bees Lip Shimmer (36 ppm organic fluorine).

### The Risks of PFAS to Health

68. PFAS are "long lasting chemicals, components of which break down very slowly over time."[29]

69. "One common characteristic of concern of PFAS is that many break down very slowly and can build up in people, animals, and the environment over time.[30]

---

[28] *See* Leah Segedie, *Green Beauty Cosmetic Guide — PFAS "Forever Chemicals" & Makeup*, *Mamavation* (Nov. 30, 2021), https://www.mamavation.com/beauty/green-beauty-cosmetic-makeup-guide-pfas-forever-chemicals.html (last visited Feb. 3, 2022).

[29] *PFAS Explained*, EPA, https://www.epa.gov/pfas/pfas-explained (last visited Feb. 3, 2022).

[30] *See Our Current Understanding of the Human Health and Environmental Risks of PFAS*, EPA, https://www.epa.gov/pfas/our-current-understanding-human-health-and-environmental-risks-pfas (last visited Feb. 3, 2022).

70.     While there are thousands of varieties of PFAS chemicals in existence, all PFAS contain carbon-fluorine bonds—one of the strongest in nature—which makes them highly persistent both in the environment and in human bodies.[31]

71.     Humans can be exposed to PFAS through a variety of ways, including ingestion, inhalation, and skin absorption.[32]

72.     As skin is the body's largest organ,[33] subjecting it to absorption of PFAS through cosmetics is very concerning.

73.     At least one study has suggested the risks of cosmetics are particularly concerning since, as "'leave-on' products, *i.e.*, they are intended to stay on the skin all day, [and result in] *a consequently greater exposure expected compared to other product types that are intended to be washed off immediately after application* ('rinse-off' products)." (emphasis added).[34]

74.     A figure utilized in the Cosmetic Study demonstrates how PFAS in cosmetics are introduced to the human body:



75.     As one blogger noted, in quoting a notable dermatologist:

Unfortunately, the technological innovations that PFAS helped create also came with a price: Serious health effects. Jennifer Herrmann, MD, FAAD, a board

---

[31] *See Per- and Polyfluoroalkyl Substances (PFAS)*, Nat'l Toxicology Program, https://ntp.niehs.nih.gov/whatwestudy/topics/pfas/index.html (Aug. 3, 2021) (last visited Jan. 7, 2022).
[32] *Id.*
[33] Gary Swann, *The Skin is the Body's Largest Organ*, 33 J. of Visual Commc'n in Med., no. 4, 2010, at 148 (Dec. 2010), https://doi.org/10.3109/17453054.2010.525439.
[34] *See* The Danish Env't Prot. Agency, *Risk assessment of fluorinated substances in cosmetic products* (Anna Brinch et al. eds., Oct. 2018), https://www2.mst.dk/Udgiv/publications/2018/10/978-87-93710-94-8.pdf (last viewed Feb. 10, 2022).

certified, fellowship-trained dermatologist and dermatologic surgeon at Moy Fincher Chipps Facial Plastics / Dermatology, says that PFAS may impact 'increased cholesterol, liver inflammation, increased blood pressure in pregnancy, decreased birth rate of children, decreased vaccine response in children, and increased risk of kidney or testicular cancer.'[35]

76.     In a 2019 study, the U.S. Department of Health and Human Services' National Toxicology Program found that PFAS has adverse effects on human organ systems, with the greatest impact seen in the liver and thyroid hormone.[36]

77.     A figure from the European Environmental Agency ("EEA") shows the "[e]ffects of PFAS on human health":[37]



---

[35] Marie Lodi, *"Forever Chemicals" & Cosmetics: What You Need To Know About PFAS*, Rose Inc, https://www.roseinc.com/blogs/education/pfas-forever-chemicals-cosmetics-makeup-explainer?_pos=1&_sid=6962ca83a&_ss=r (last visited Nov. 27, 2021).
[36] *PFAS Explained*, *supra* note 29.
[37] *Emerging chemical risks in Europe — 'PFAS'*, Eur. Env't Agency (Dec. 12, 2019), https://www.eea.europa.eu/publications/emerging-chemical-risks-in-europe (Mar. 9, 2021).

78.     The EEA article further explained that "[p]eople most at risk of adverse health impacts are those exposed to high levels of PFAS, and vulnerable population groups such as children and the elderly."[38]

79.     The Center for Disease Control's Agency for Toxic Substances and Disease Registry has recognized that exposure to high levels of PFAS may impact the immune system and reduce antibody responses to vaccines.[39]

80.     The danger of PFAS chemicals is well known. On September 20, 2020, a New York Times article titled, "These Everyday Toxins May Be Hurting Pregnant Women and Their Babies" reported on the dangers of PFAS—particularly during gestation and in early childhood development:[40]

> **Scientists think these widely used industrial chemicals may harm pregnant women and their developing babies by meddling with gene regulators and hormones that control two of the body's most critical functions: metabolism and immunity.**
>
> More disturbing, PFAS can also alter levels of both mothers' and babies' thyroid hormones, which oversee brain development, growth and metabolism, and also play a role in immunity. Prenatal PFAS exposures that disrupt metabolism and immunity may cause immediate and lasting effects on both mother and child. Women exposed to PFAS during pregnancy have higher risks of gestational diabetes and pre-eclampsia, a type of high blood pressure. Their babies are more likely to undergo abnormal growth in utero, leading to low birth weight, and later face increased risk of childhood obesity and infections.

81.     Additionally, according to the EEA:

> Costs to society arising from PFAS exposure are high, with the annual health-related costs estimated to be EUR 52-84 billion across Europe in a recent study (Nordic Council of Ministers, 2019). The study notes that these costs are likely underestimated, as only a limited range of health effects (high cholesterol,

---

[38] *Id.*

[39] *What are the health effects of PFAS?*, Agency for Toxic Substances and Disease Registry, https://www.atsdr.cdc.gov/pfas/health-effects/index.html (June 24, 2020) (last visited Nov. 27, 2021).

[40] Liza Gross, *These Everyday Toxins may be Hurting Pregnant Women and Their Babies*, N.Y. Times, Sept. 23, 2020, https://www.nytimes.com/2020/09/23/parenting/pregnancy/pfas-toxins-chemicals.html (Oct. 18, 2021).

decreased immune system and cancer) linked to exposure to a few specific PFAS were included in the estimates.

82.     This analysis has yet to be performed in the United States; however, there is no reason to believe the conclusions would differ.

83.     "The Madrid Statement," a scientific consensus regarding the persistence and potential for harm of PFAS substances issued by the Green Science Policy Institute and signed by more than 250 scientists from 38 countries, recommended the following actions in order to mitigate future harm: (1) discontinuing use of PFAS where not essential or safer alternatives exist; (2) labeling products containing PFAS; and (3) encouraging retailers and individual consumers to avoid products containing or manufactured using PFAS whenever possible.[41]

**Defendants' Misrepresentations and Omissions are Actionable**

84.     Plaintiff and the Class were injured by the full purchase price of the Products because the Products are worthless, as they are adulterated and contain harmful levels of PFAS, and Defendants failed to warn or misrepresented this fact to consumers. Such illegally sold Products are worthless and have no value.

85.     Plaintiff and Class Members bargained for cosmetic products that are free of contaminants and dangerous substances and were deprived the basis of their bargain when Defendants sold them a product containing the dangerous substance PFAS, which rendered the Products unmerchantable and unfit for use.

86.     No reasonable consumer would expect that a product line marketed as Products are "consciously crafted," formulated without "chemicals of concern" and "KIND TO SKIN & PLANET" would contain dangerous PFAS—which scientific studies indisputably link to harmful health effects in humans. Accordingly, Plaintiff and Class Members suffered economic injuries as a result of purchasing the Products.

---

[41] Arlene Blum et al., *The Madrid Statement*, Green Sci. Pol'y Inst., https://greensciencepolicy .org/our-work/science-policy/madrid-statement/ (last visited Nov. 27, 2021).

87.     As the Products expose consumers to PFAS that pose a risk to both consumers' health and the environment, the Products are not fit for use by humans. Plaintiff and the Class are further entitled to damages for the injury sustained in being exposed to high levels of toxic PFAS, damages related to Defendants' conduct, and injunctive relief.

88.     Plaintiff has standing to represent Members of the putative Classes because there is sufficient similarity between the specific products purchased by the Plaintiff and the other Products not purchased by the Plaintiff. Specifically, each and every one of Defendants' Products (i) are marketed in substantially the same way – as "consciously crafted," formulated without "chemicals of concern" and "KIND TO SKIN & PLANET"– and (ii) fail to include labeling indicating to consumers that the Products may contain PFAS that are widely considered "chemicals of concern" and far from "KIND TO SKIN & PLANET." Accordingly, the misleading effect of all of the Products' labels are substantially the same.

89.     As alleged herein, Plaintiff and the Classes received something worth less than what they paid for and did not receive the benefit of their bargain. They paid for the Products, which were supposed to not contain "chemicals of concern" and be "KIND TO SKIN & PLANET," but Plaintiff and Class received none of these.

90.     Plaintiff seeks to recover damages because the Products are adulterated, defective, worthless, and unfit for human use due to the presence of PFAS.

**Defendants' Marketing and Sale of the Products Violates Federal Law**

91.     Section 5(a) of the Federal Trade Commission ("FTC") Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

92.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

93.     Section 12 of the FTC Act, 15 U.S.C. § 52, prohibits the dissemination of any false advertisement in or affecting commerce for the purpose of inducing, or which is likely to induce, the purchase of food, drugs, devices, services, or cosmetics. For the purposes of Section 12 of the FTC Act, 15 U.S.C. § 52, the Products are "cosmetics as defined in Section 15 (e) of the FTC Act.

15 U.S.C. § 55 (e). Under this provision, Defendants and other companies must have a reasonable basis for making objective product claims.

94.     The Federal Food, Drug, and Cosmetic Act ("FD&C Act") prohibits "The introduction or delivery for introduction into interstate commerce of any food, drug, or cosmetic that is adulterated or misbranded." 21 U.S.C. § 331(a).

95.     Defendants have represented that the ingredients in its Products are safe, natural, and sustainable, omitting the inclusion of PFAS. However, these representations are false, deceptive, and misleading as the Products actually contain dangerous levels of PFAS. The making of such misrepresentations by Defendants constitutes a deceptive act or practice and the making of false advertisements in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52(b).

96.     As alleged herein, Defendants have violated the FD&C Act and consumer protection statutes.

97.     Plaintiff and the Classes have suffered injury in fact and have lost money as a result of Defendants' unlawful sale of the Products. Indeed, no reasonable consumer, including Plaintiff, would have purchased the Products had they known they were adulterated and/or misbranded.

98.     Defendants engaged in fraudulent, unfair, deceptive, misleading, and/or unlawful conduct stemming from its omissions surrounding PFAS contamination affecting the Products.

## PLAINTIFF'S FACTUAL ALLEGATIONS

### Plaintiff Daniela Gruen

99.     Plaintiff Daniela Gruen purchased Burt's Bees Products, including but not limited to the Burt's Bees Nourishing Mascara, Lip Shimmer, and Lip Gloss for her personal use. She purchased the Products in the past year at Wegman's and CVS stores near her residence in Jamesburg, Middlesex County, New Jersey.

100.    Nowhere on the Product packaging did Defendants disclose to Plaintiff Gruen at the time of her purchase that the Products contain PFAS.

101.    If Plaintiff Gruen had been aware of the existence of PFAS in the Products, she would not have purchased the Products or would have paid significantly less.

102.    As a result of Defendants' actions, Plaintiff Gruen has incurred damages, including economic damages.

103.    Plaintiff Gruen has suffered injury in fact and have lost money as a result of Defendants' unlawful sale of the Products. Indeed, no reasonable consumer, including Plaintiff Gruen, would have purchased the Products had they known of the material omissions of material facts regarding the presence of PFAS. Accordingly, Plaintiff Gruen suffered injury in fact and lost money as a result of Defendants' misleading representations. She did not receive the benefit of her bargain.

104.    Plaintiff Gruen's injuries are underscored by the fact that numerous other products offering the same benefit at comparable prices exist that are not prone to PFAS contamination.

105.    If Defendants' Products were reformulated to be safe and free of PFAS, Plaintiff Gruen would choose to purchase the Products in the future. She may be harmed again in the future, however, without injunctive relief. Plaintiff would not be able to know or trust that Defendants have truthfully and fully labeled the Products and would be likely to be misled again.

## **FED. R. CIV. P. 9(b) ALLEGATIONS**

### **(Affirmative and By Omission)**

106.    Although Defendants are in the best position to know what content they placed on its website(s) and in marketing materials during the relevant timeframe, and the knowledge that Defendants had regarding the PFAS and their failure to disclose the existence of PFAS in the Products to consumers, to the extent necessary, Plaintiff satisfies the requirements of Rule 9(b) by alleging the following facts with particularity:

107.    **WHO**: Defendants made material misrepresentations and/or omissions of fact about the Products through their labeling, website representations, third-party retailers, and marketing statements, which include the statements that the Products "consciously crafted with ingredients from nature," "over 95% natural origin," formulated without "chemicals of concern,"

and are "KIND TO SKIN & PLANET." These representations constitute omitted material information regarding harmful chemicals in the Products.

108.   **WHAT**: Defendants' conduct here was, and continues to be, fraudulent because it omitted and concealed that the Products contain PFAS, an ingredient that Defendants knew would not be deemed formulated without "chemicals of concern" or "KIND TO SKIN & PLANET" by Plaintiff and Class Members. Thus, Defendants' conduct deceived Plaintiff and Class Members into believing that the Products are formulated without "chemicals of concern" and "KIND TO SKIN & PLANET." Defendants knew or should have known this information is material to reasonable consumers, including Plaintiff and Class Members in making their purchasing decisions, yet they continued to pervasively market the Products in this manner.

109.   **WHEN**: Defendants made material misrepresentations and/or omissions during the putative Class periods and at the time Plaintiff and Class Members purchased the Products, prior to and at the time Plaintiff and Class Members made claims after realizing the Products contained harmful chemicals, and continuously throughout the applicable Class periods.

110.   **WHERE**: Defendants' marketing message was uniform and pervasive, carried through material misrepresentations and/or omissions on the labeling of the Products packaging, website(s), and through marketing materials.

111.   **HOW**: Defendants made material misrepresentations and/or failed to disclose material facts regarding the Products, including but not limited to the presence of PFAS.

112.   **WHY**: Defendants made the material misrepresentations and/or omissions detailed herein for the express purpose of inducing Plaintiff, Class Members, and all reasonable consumers to purchase and/or pay for the Products, the effect of which was that Defendants profited by selling the Products to many hundreds of thousands of consumers.

113.   **INJURY**: Plaintiff and Class Members purchased, paid a premium, or otherwise paid more for the Products when they otherwise would not have absent Defendants' misrepresentations and/or omissions.

**TOLLING AND ESTOPPEL OF STATUTE OF LIMITATIONS**

114.    Defendants have had actual knowledge for years that the Products contained potentially harmful chemicals such as PFAS.

115.    Although Defendants were aware of the deception in its labeling given the inclusion of PFAS in the Products despite claims of the Products being formulated without "chemicals of concern" and "KIND TO SKIN & PLANET" it took no steps to warn Plaintiff or Class Members of risks related to PFAS in the Products.

116.    Despite their knowledge, Defendants have fraudulently misrepresented the risks of Products that contain PFAS. Defendants had a duty to disclose the existence and dangers of the PFAS.

117.    Defendants made, and continues to make, affirmative misrepresentations to consumers, to promote sales of the Products, including that the Products are formulated without "chemicals of concern" and "KIND TO SKIN & PLANET," and even suitable for sensitive skin.

118.    Defendants concealed material facts that would have been important to Plaintiff and Class Members in deciding whether to purchase the Products. Defendants' concealment was knowing, and it intended to, and did, deceive reasonable consumers, including Plaintiff and Class Members. Accordingly, Plaintiff and Class Members reasonably relied upon Defendants' concealment of these material facts and suffered injury as a proximate result of that justifiable reliance.

119.    The PFAS included in the formulation, design and/or manufacture of the Products was not reasonably detectible to Plaintiff and Class Members.

120.    At all times, Defendants actively and intentionally concealed the existence of the PFAS and failed to inform Plaintiff or Class Members of the existence of the PFAS. Accordingly, Plaintiff and Class Members' lack of awareness was not attributable to a lack of diligence on their part.

121.    Defendants' statements, words, and acts were made for the purpose of suppressing the truth that the Products contained harmful chemicals.

122.    Defendants concealed or misrepresented the PFAS for the purpose of delaying Plaintiff and Class Members from filing a complaint on their causes of action.

123.    As a result of Defendants' active concealment of the PFAS and/or failure to inform Plaintiff and Class Members of the PFAS, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled. Furthermore, Defendants are estopped from relying on any statutes of limitations in light of its active concealment of the potentially harmful and/or human-made nature of the Products.

124.    Further, the causes of action alleged herein did not occur until Plaintiff and Class Members discovered that the Products contained PFAS. Plaintiff and Class Members had no realistic ability to discern that the Products contained PFAS until they learned of the existence of the PFAS. In either event, Plaintiff and Class Members were hampered in their ability to discover their causes of action because of Defendants' active concealment of the existence and true nature of the PFAS.

## CLASS ACTION ALLEGATIONS

125.    Plaintiff brings this case as a class action pursuant to Federal Rule of Civil Procedure 23 on her own behalf and as the Class representative on behalf of the following:

> **Nationwide Class:** All persons within the United States who purchased the Products within the applicable statute of limitations.

> **New Jersey Subclass:** All persons within the State of New Jersey who purchased the Products within the applicable statute of limitations.

126.    The Nationwide Class and New Jersey Subclass shall collectively be referred to herein as the "Classes."

127.    Plaintiff reserves the right to amend the Class definitions if further investigation and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

128.    Excluded from the Classes are governmental entities, The Clorox Company and Burt's Bees Products Company officers, directors, affiliates, legal representatives, and employees.

129.    This action has been brought and may be maintained as a class action under Federal Rule of Civil Procedure 23.

130.    **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** This Class numbers at least in the thousands of persons. As a result, joinder of all Class Members in a single action is impracticable. Class Members may be informed of the pendency of this class action through a variety of means, including, but not limited to, direct mail, email, published notice, and website posting.

131.    **Existence and Predominance of Common Questions of Law and Fact – Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3).** There are questions of fact and law common to the Classes that predominate over any question affecting only individual Members. Those questions, each of which may also be certified under Rule 23(c)(4), include without limitation:

a.    whether Defendants' advertising, merchandising, and promotional materials directed to Plaintiff were deceptive regarding the risks posed by PFAS concentrations in Defendants' Products;

b.    whether Defendants made representations regarding the safety of the Products;

c.    whether Defendants omitted material information regarding the safety of the Products;

d.    whether Defendants' Products were merchantable;

e.    whether Defendants violated consumer protection statutes invoked herein;

f.    whether Defendants' conduct alleged herein was fraudulent;

g.    whether Defendants were unjustly enriched by sales of the Products; and

h.    whether Defendants must also pay statutory damages to consumers who have purchased the Products.

132.    The questions set forth above predominate over any questions affecting only individual persons concerning sales of Defendants' Products throughout the United States and a class action is superior with respect to considerations of consistency, economy, efficiency,

fairness, and equity to other available methods for the fair and efficient adjudication of Plaintiff's claims.

133. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of those of the Class in that the Class Members uniformly purchased Defendants' Products and were subjected to Defendants' uniform merchandising materials and representations at the time of purchase.

134. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is the appropriate method for the fair and efficient adjudication of this controversy. The presentation of separate actions by individual Class Members could create a risk of inconsistent adjudications, establish incompatible standards of conduct for Defendants, and/or substantially impair or impede the ability of Class Members to protect their interests. In addition, it would be impracticable and undesirable for each Member of the Class who suffered an economic loss to bring a separate action. The maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Class Members.

135. **Adequacy – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate representative of the Classes because she is a Member of the Classes and her interests do not conflict with the interests of the Classes that she seeks to represent. The interests of the Members of the Classes will be fairly and adequately protected by Plaintiff and her undersigned counsel. Counsel is experienced in the litigation of civil matters, including the prosecution of consumer protection class action cases.

136. **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Absent a representative class action, Members of the Classes would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers,

substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendants. The proposed Classes thus satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

137.    **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendants have acted or refused to act on grounds generally applicable to Plaintiff and the other Members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole. In particular, Plaintiff seeks to certify a Class to enjoin Defendants from selling or otherwise distributing the Products as labeled until such time that Defendants can demonstrate to the Court's satisfaction that the Products confer the advertised benefits and are otherwise safe to use as intended.

138.    Additionally, the Classes may be certified under Rule 23(b)(1) and/or (b)(2) because:

a.    The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual Members of the Classes that would establish incompatible standards of conduct for the Defendants;

b.    The prosecution of separate actions by individual Members of the Classes would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Members of the Classes not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

c.    Defendants have acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final and injunctive relief with respect to the members of the Classes as a whole.

## CAUSES OF ACTION

### COUNT I
**Breach of Express Warranty**
**(On Behalf of the National Class and, alternatively, the Subclasses)**

139.     Plaintiff repeats and re-alleges the allegations above as if set forth herein.

140.     Plaintiff, and each Member of the National Class and Subclasses, formed a contract with Defendants at the time Plaintiff and each Member of the National Class and Subclasses purchased the Products.

141.     The terms of the contract include the promises and affirmations of fact made by Defendants on the Products' packaging and through marketing and advertising, as described above.

142.     This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain and are part of the standardized contract between Plaintiff and the Members of the National Class and Subclasses and Defendants.

143.     As set forth above, Defendants purport through their advertising, labeling, marketing, and packaging, to create an express warranty that the Products are safe for their intended use and are environmentally sustainable.

144.     Plaintiff and the Members of the National Class and Subclasses performed all conditions precedent to Defendants' liability under this contract when they purchased the Products.

145.     Defendants breached express warranties about the Products and their qualities because Defendants' Products contained the harmful chemical PFAS at the time of purchase and the Products did not conform to Defendants' affirmations and promises described above.

146.     Plaintiff and each of the Members of the National Class and Subclasses would not have purchased the Products had they known the true nature of the harmful chemicals in the Products.

147.     As a result of Defendants' breach of warranty, Plaintiff and each Class Member and Subclass Member suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

**COUNT II**
**Breach of Implied Warranty**
**(On Behalf of the National Class and, alternatively, the Subclasses)**

148.    Plaintiff repeats and re-alleges the allegations above as if set forth herein.

149.    Defendants are merchants and were at all relevant times involved in the manufacturing, distributing, warranting, and/or selling of the Products.

150.    The Products are "goods" under the relevant laws and Defendants knew or had reason to know of the specific use for which the Products, as goods, were purchased.

151.    Defendants entered into agreements with retailers to sell its Products to be used by Plaintiff and Class Members for personal use.

152.    The implied warranty of merchantability included with the sale of each Product means that Defendants guaranteed that the Products would be fit for the ordinary purposes for which cosmetics are used and sold and were not otherwise injurious to consumers. The implied warranty of merchantability is part of the basis for the benefit of the bargain between Defendants, and Plaintiff and the Class Members.

153.    Defendants breached the implied warranty of merchantability because the Products are not fit for their ordinary purpose of providing reasonably safe cosmetics for daily facial use because the Products contain PFAS, a known and dangerous carcinogen. Therefore, the Products are not fit for their particular purpose of use as a makeup product.

154.    Defendants' warranty expressly applies to the purchaser of the Products, creating privity between Defendants and Plaintiff, Class Members, and Subclass Members.

155.    However, privity is not required because Plaintiff and Class Members are the intended beneficiaries of Defendants' warranties and its sale through retailers. Defendants' retailers were not intended to be the ultimate consumers of the Products and have no rights under the warranty agreements. Defendants' warranties were designed for and intended to benefit consumers only, including Plaintiff and Class Members.

156.    Defendants have been provided sufficient notice of its breaches of implied warranties associated with the Products. Defendants were put on constructive notice of its breach

through its review of consumer complaints and other reports, including the Mamavation article and testing reports discussed in this Complaint, and upon information and belief through its own product testing. In addition, Plaintiff sent a notice letter to Defendants, served, through their registered agent, on February 3, 2022.

157. Had Plaintiff, Class Members, and the consuming public known that the Products included PFAS that are neither safe nor sustainable, they would not have purchased the Products or would have paid less for them.

158. As a direct and proximate result of the foregoing, Plaintiff and Class Members suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

<u>**COUNT III**</u>
**Fraudulent Concealment**
**(On Behalf of the Nationwide Class, or**
**alternatively, on behalf of the Subclasses)**

159. Plaintiff repeats and re-alleges the allegations above as if set forth herein.

160. Plaintiff brings this claim against Defendants, on behalf of herself and the other Members of the Nationwide Class, and, alternatively, the individual State Subclasses

161. Defendants had a duty to disclose material facts to Plaintiff and the National Class and Subclasses given their relationship as contracting parties and intended users of the Products. Defendants also had a duty to disclose material facts to Plaintiff and the Members of the National Class and Subclasses, namely that it was in fact manufacturing, distributing, and selling harmful products unfit for human use and that these Products are not sustainable, because Defendants had superior knowledge such that the transactions without the disclosure were rendered inherently unfair.

162. Defendants possessed knowledge of these material facts. Since at least mid-2020, numerous investigations, testing, and recalls put Defendants on notice that adulterated and misbranded products were being investigated for contamination with carcinogens, including PFAS. Further, product contamination by PFAS is avoidable in the manufacture of cosmetics.

163.    During this time, Plaintiff, and Members of the National Class and Subclasses, were using the Products without knowing they contained dangerous levels of PFAS.

164.    Defendants failed to discharge its duty to disclose these materials facts.

165.    In so failing to disclose these material facts to Plaintiff and the Members of the National Class and Subclasses, Defendants intended to hide from Plaintiff and the Members of the National Class and Subclasses that they were purchasing and using Products on their faces, skin, near their eyes and on their lips that have harmful defects that were unfit for human use, and thus acted with scienter and/or an intent to defraud.

166.    Plaintiff and the Members of the National Class and Subclasses reasonably relied on Defendants' misrepresentations, and failure to disclose safety and sustainability risks insofar as they would not have purchased the defective Products manufactured and sold by Defendants had they known they contain toxic and unsustainable PFAS.

167.    As a direct and proximate cause of Defendants' fraudulent concealment, Plaintiff, and the Members of the National Class and Subclasses, suffered damages in the amount paid for the defective Products.

168.    As a result of Defendants' willful and malicious conduct, punitive damages are warranted.

**COUNT IV**
**Unjust Enrichment**
**(On Behalf of the Nationwide Class)**

169.    Plaintiff repeats and re-alleges the allegations above as if set forth herein.

170.    Plaintiff, and the other Members of the Nationwide Class, conferred benefits on Defendants in the form of monies paid to purchase Defendants' defective and worthless Products.

171.    Defendants voluntarily accepted and retained this benefit.

172.    Because this benefit was obtained unlawfully, namely by selling and accepting compensation for products unfit for human use, it would be unjust and inequitable for Defendants to retain the benefit without paying the value thereof.

173.    Defendants received benefits in the form of revenues from purchases of the Products to the detriment of Plaintiff, and the other Members of the Nationwide Class, because Plaintiff, and Members of the Nationwide Class, purchased Products that were mislabeled or misrepresented that were not what they bargained for and were not safe, sustainable, and effective, as claimed.

174.    Defendants was unjustly enriched in retaining the revenues derived from the purchases of the Products by Plaintiff and the other Members of the Nationwide Class. Retention of those monies under these circumstances is unjust and inequitable because Defendants' labeling of the Products was misleading to consumers, which caused injuries to Plaintiff, and Members of the Nationwide Class, because they would have not purchased the Products had they known the true facts.

175.    Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiff and Members of the Nationwide Class is unjust and inequitable, Defendants must pay restitution to Plaintiff and Members of the Nationwide Class for its unjust enrichment, as ordered by the Court.

## COUNT V
### California Consumers Legal Remedies Act ("CLRA")
### (On Behalf of the Nationwide Class)

176.    Plaintiff brings this count on behalf of herself and the Class and repeats and re-alleges all previous paragraphs, as if fully included herein.

177.    The CLRA prohibits deceptive practices by any business that provides goods, property, or services primarily for personal, family, or household purposes.

178.    Plaintiff and the Class Members are "consumers" as defined in California Civil Code § 1761(d).

179.    The Products are "goods" as defined in California Civil Code § 1761(a).

180.    Defendants are "persons" as defined in California Civil Code § 1761(c).

181.    Plaintiff's and the Class Members' purchases of the Products are "transactions" as defined in California Civil Code § 1761(e).

182.   The marketing and sales of the Products, including the decision to not disclose the PFAS, were in whole or substantial part made from the Defendants' Oakland, California headquarters.

183.   Defendants' representations and omissions concerning the quality, benefits and effectiveness of the Products were false and/or misleading as alleged herein.

184.   Defendants' false or misleading representations and omissions were such that a reasonable consumer would attach importance to them in determining his or her purchasing decision.

185.   Defendants' false and misleading representations and omissions were made to the entire Class as they were prominently displayed on the packaging of every Burt's Bees Product.

186.   Defendants knew or should have known their representations and omissions were material and were likely to mislead consumers, including Plaintiff and the Class.

187.   Defendants' practices, acts, and course of conduct in marketing and selling the Burt's Bees Products were and are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment.

188.   Defendants' false and misleading representations and omissions were designed to, and did, induce the purchase and use of the Burt's Bees Products for personal, family, or household purposes by Plaintiff and Class Members, and violated and continue to violate the following sections of the CLRA:

   a.   § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

   b.   § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

   c.   § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

   d.   § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it was not.

189.     Defendants profited from the sale of the falsely, deceptively, and unlawfully advertised Products to unwary consumers.

190.     Defendants' wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

191.     Defendants' wrongful business practices were a direct and proximate cause of actual harm to Plaintiff and to each Class Member.

192.     Pursuant to the provisions of Cal. Civ. Code § 1782(a), Plaintiff provided notice to Defendants of their alleged violations of the CLRA, demanding that Defendants correct such violations, and providing them with the opportunity to correct their business practices. Notice was sent via certified mail, return receipt requested on <u>February 3, 2022</u>. As of the date of filing this complaint, Defendants have not responded. Accordingly, if after 30 days no satisfactory response to resolve this litigation on a class-wide basis has been received, Plaintiff will seek leave to amend this request to seek restitution and actual damages as provided by the CLRA.

193.     Pursuant to California Civil Code § 1780, Plaintiff seeks injunctive relief, reasonable attorneys' fees and costs, and any other relief that the Court deems proper.

## COUNT VI
### California Unfair Competition Law ("UCL")
### (On Behalf of the Nationwide Class)

194.     Plaintiff brings this count on behalf of herself and the Class and repeats and re-alleges all previous paragraphs, as if fully included herein.

195.     Defendants' marketing and sales of the Products, including the decision to not disclose the alleged defect, were in whole or substantial part made from the Defendants' Oakland, California headquarters.

196.     The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Defendants' acts, omissions, misrepresentations, practices, and non-disclosures as alleged herein constitute business acts and practices.

197.     Defendants' acts, omissions, misrepresentations, practices and non-disclosures as alleged herein constitute unlawful, unfair, and fraudulent business practices in that they have the

capacity to deceive reasonable consumers, including Plaintiff and the Class, as to the benefits and ingredients of the Burt's Bees Products.

198. <u>Unlawful</u>: The acts alleged herein are "unlawful" under the UCL in that they violate at least: (a) the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*; (b) the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*; and (c) California's Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 109875, *et seq.*

199. <u>Unfair</u>: Defendants' conduct with respect to the labeling, advertising, and sale of Burt's Bees Products was "unfair" because Defendants' conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims, including Plaintiff and the Class.

a. Defendants' conduct with respect to the labeling, advertising, and sale of Burt's Bees Products was and is unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the applicable sections of the False Advertising Law and Consumers Legal Remedies Act.

b. Defendants' conduct with respect to the labeling, advertising, and sale of the Products was and is unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumer themselves could reasonably have avoided.

c. Reasonable consumers, including Plaintiff and the Class, purchased the Products believing they were beneficial and effective as claimed by Defendants when in fact they were not—a fact of which consumers could not reasonably have become aware.

200. <u>Fraudulent</u>: A statement or practice is "fraudulent" under the UCL if it is likely to mislead or deceive the public, applying an objective reasonable consumer test.

a. As set forth herein, Defendants' representations and omissions about the quality, benefits, and effectiveness of the Products were and are false and likely to mislead

or deceive the public because a significant portion of the general consuming public, acting reasonably in the circumstances, could be misled by Defendants' representations and omissions.

201.   Defendants profited from their sale of the falsely, deceptively, and unlawfully advertised and packaged Products to unwary consumers.

202.   Defendants' conduct directly and proximately caused and continues to cause substantial injury to Plaintiff and the other Class Members. Plaintiff and the Class have suffered injury-in-fact as a result of Defendants' unlawful conduct including but not limited to the damages as described above.

203.   Plaintiff and the Class are likely to continue to be damaged by Defendants' deceptive trade practices, because Defendants continue to disseminate misleading information on the Products' packaging and through the marketing and advertising of the Products. Thus, injunctive relief enjoining Defendants' deceptive practices is proper.

204.   Because Plaintiff prefers to buy and use cosmetic products that are both safe and sustainable, she suffers threat of future harm by the Defendants because she is unable to rely on Defendants' representations regarding the qualities and ingredients of their products in deciding whether to purchase Burt's Bees Products in the future. Likewise, because Defendants have made such representations with impunity thus far, Plaintiff's ability to discern truthful from untruthful claims made with respect to competitors' cosmetic products is impaired. Injunctive relief requiring Defendants to make only truthful statements in their advertising would remedy these harms.

205.   In accordance with Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendants from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

206.   Plaintiff and the Class also seek an order for and restitution of all monies from the sale of the Products, which were unjustly acquired through acts of unlawful competition.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COUNT VII**
**New Jersey Consumer Fraud Act**
**Fraud in Connection with Sale or Advertisement of Merchandise**
**N.J. Stat. Ann. §§ 56:8-1,** *et seq.*
**(On Behalf of the New Jersey Subclass)**

207.    Plaintiff incorporates by reference and reallege each and every allegation contained above, as though fully set forth herein.

208.    Defendants' representations related to the Products, as described herein, are advertisements as defined by N.J. Stat. Ann. § 56:8-1(a).

209.    The Products sold by Defendants are merchandise as defined in N.J. Stat. Ann. § 56:8-1(c).

210.    Defendants are persons as defined in N.J. Stat. Ann. § 56:8-1(d).

211.    Defendants misrepresented the true quality and ingredients of the Products. The false statements regarding the quality and ingredients were untrue, misleading, and deceptive, inducing Plaintiff and other consumers to spend more for Products that have lower quality than represented.

212.    The misrepresented quality and ingredients of the Products is a material fact to Plaintiff and other consumers because it is directly related to quality, and because Defendants recognize the materiality as evidenced by their prominent placement on Defendants' labels, packaging, and advertising.

213.    Defendants failed to disclose the presence of PFAS in the Products. These were material facts that Defendants omitted from the packaging of the Products. Consumers, including Plaintiff and the New Jersey Subclass, would not have paid as much for the Products had Defendants accurately disclosed the quality and ingredients of the Products. Nor could Defendants charge as much for such Products, as the quality and ingredients are directly related to the amount of money retailers are able to charge for Products.

214.    Defendants placed the false quality in labels, packaging, and advertising related to the Products, intending that consumers would rely on those misrepresentations and purchase the Products from Defendants. Plaintiff and the New Jersey Subclass were harmed by Defendants'

40

misrepresentations and purchased the Products. Had Defendants disclosed the true quality and contents, Plaintiff and Members of the New Jersey Subclass would not have purchased the Products or would not have been willing to pay as much for the Products.

215.    Plaintiff and Class Members have suffered an ascertainable loss by paying more than they would have otherwise paid—and more than Defendants would have been able to charge—for the Products and by receiving Products with lower quality than they were promised by Defendants and thus being denied the benefit of their bargain.

216.    As a direct and proximate result of the deceptive, fraudulent, misleading, unfair, and unconscionable practices of the Defendants set forth above, the New Jersey Plaintiff and the New Jersey Subclass Members are entitled to a refund of all moneys acquired by Defendants for violations of N.J. Stat. Ann. § 56:8-1, any other applicable legal or equitable relief, and treble damages.

## **RELIEF DEMANDED**

WHEREFORE, Plaintiff, individually and on behalf of the Class and Subclass of all others similarly situated, seeks a judgment against Defendants, as follows:

a.   For an Order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as Class Representative and Plaintiff's attorneys as Class Counsel;

b.   For an Order declaring that Defendants' conduct violates the statutes referenced herein;

c.   For an Order finding in favor of Plaintiff and the Class on all counts asserted herein;

d.   For compensatory, statutory, and punitive damages, as applicable, in amounts to be determined by the Court and/or jury;

e.   For prejudgment interest on all amounts awarded;

f.   For an Order of restitution and all other forms of equitable monetary relief;

g.   For injunctive relief as pleaded or as the Court may deem proper; and

h.   For an Order awarding Plaintiff and the Class reasonable attorneys' fees, expenses

1    and costs incurred in bringing and prosecuting this lawsuit.

2                    **<u>JURY TRIAL DEMANDED</u>**

3    Plaintiff demands a trial by jury on all claims so triable.

4

5    Dated: February 15, 2022                Respectfully submitted,

6

7                                            */s/ Danielle L. Perry*
                                             Danielle L. Perry (SBN 292120)
8                                            Gary E. Mason*
                                             **MASON LIETZ & KLINGER LLP**
9                                            5101 Wisconsin Avenue NW, Suite 305
                                             Washington, D.C. 20016
10                                           Telephone: (202) 429-2290
                                             Facsimile: (202) 429-2294
11                                           Email: dperry@masonllp.com
                                             Email: gmason@masonllp.com
12

13                                           Jonathan Shub (SBN 237708)
                                             Kevin Laukaitis*
14                                           **SHUB LAW FIRM LLC**
                                             134 Kings Highway E., 2nd Floor
15                                           Haddonfield, NJ 08033
                                             Telephone: (856) 772-7200
16                                           Facsimile: (856) 210-9088
                                             Email: jshub@shublawyers.com
17                                           Email: klaukaitis@shublawyers.com

18

19                                           *Counsel for Plaintiff and the Proposed Class*

20                                           *Applications for pro hac vice to follow*

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT